No. 23-1793

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

JULIE A. SU, Acting Secretary of Labor, United States Department of Labor,
Plaintiff - Appellee,

v.

F.W. WEBB COMPANY,
Defendant - Appellant.

On Appeal From The United States District Court for the District of
Massachusetts
Case No. 1:20-cv-11450-AK

## BRIEF OF THE ACTING SECRETARY OF LABOR

SEEMA NANDA
Solicitor of Labor

JENNIFER S. BRAND
Associate Solicitor

RACHEL GOLDBERG
Counsel for Appellate Litigation

JOSEPH E. ABBOUD
Attorney
U.S. Department of Labor
200 Constitution Ave, N.W.
Room N-2716
Washington, D.C. 20210
(202) 693-5625
abboud.joseph.e@dol.gov

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS.......................................................................... ii

TABLE OF AUTHORITIES ..................................................................iv

REASONS WHY ORAL ARGUMENT NEED NOT BE HEARD .......................vi

STATEMENT OF JURISDICTION..........................................................2

STATEMENT OF THE ISSUE.................................................................2

STATEMENT OF THE CASE..................................................................2

    A.    Relevant Statutory and Regulatory Provisions Regarding the Administrative Exemption .................................................................2

    B.    Statement of Facts .................................................................4

    C.    Procedural Background .........................................................7

    D.    Decision of the District Court .............................................8

SUMMARY OF ARGUMENT ...............................................................10

STANDARD OF REVIEW…………………………………………….12

ARGUMENT ......................................................................................12

THE DISTRICT COURT CORRECTLY DETERMINED THAT THE SALES REPRESENTATIVES ARE NOT EXEMPT ADMINISTRATIVE EMPLOYEES...............................................................................12

    A.    The Undisputed Facts Show that the Sales Representatives' Primary Duty Directly Relates to Webb's Business Purpose ...........................12

B.  *Marcus* Is Consistent with the District Court's Conclusion and Does Not Warrant Reversal ............................................................. 26

CONCLUSION ........................................................................................... 31

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bigger v. Facebook, Inc.*,
947 F.3d 1043 (7th Cir. 2020).............................................................. 15

*Bothell v. Phase Metrics, Inc.*,
299 F.3d 1120 (9th Cir. 2002).............................................................. 23

*Calderon v. GEICO Gen. Ins. Co.*,
809 F.3d 111 (4th Cir. 2015)........................................................... 13, 23

*Cash v. Cycle Craft Co. Inc,*,
508 F.3d 680 (1st Cir. 2007) ............................................................... 30

*Encino Motorcars, LLC v. Navarro*,
138 S. Ct. 1134 (2018) ....................................................................... 24

*Hendricks v. Total Quality Logistics, LLC*,
2023 WL 6255723 (S.D. Ohio Sept. 26, 2023) .................................... 22

*Isett v. Aetna Life Ins. Co.*,
947 F.3d 122 (2d Cir. 2020).................................................................. 24

*Marcus v. American Contract Bridge League*,
80 F.4th 33 (1st Cir. 2023)............................................................. Passim

*Martin v. Cooper Electric Supply Company*,
940 F.2d 896 (3d Cir. 1991)............................................................ Passim

*Reich v. John Alden Life Ins. Co.*,
126 F.3d 1 (1st Cir. 1997) ...................................................... 13, 22, 30

*Smith v. Johnson & Johnson*,
2008 WL 5427802 (D.N.J. Dec. 30, 2008) ......................................... 22

*Walsh v. Unitil Service Corp*,
64 F.4th 1 (1st Cir. 2023)............................................................... Passim

**Statutes**

28 U.S.C. 1291 ................................................................................. 2
28 U.S.C. 1331 ................................................................................. 2
28 U.S.C. 1345 ................................................................................. 2

29 U.S.C. 207(a)(1) .......................................................................... 2
29 U.S.C. 211(c) ............................................................................... 3
29 U.S.C. 213 ................................................................................. 24
29 U.S.C. 213(a)(1) .......................................................................... 3
29 U.S.C. 216(c) ............................................................................... 2
29 U.S.C. 217 ................................................................................... 2

**Rules**

Fed. R. App. P. 4(a)(1)(B) ............................................................... 2

**Code of Federal Regulations**

29 C.F.R. 516.2(a) ........................................................................... 3
29 C.F.R. 541.200(a) .................................................................. 3, 29
29 C.F.R. 541.200(a)(2) ................................................................... 8
29 C.F.R. 541.201(a) ........................................................ 4, 12, 13, 26
29 C.F.R. 541.201(b) ........................................................................ 4
29 C.F.R. 541.700(a) ................................................................. 12, 14

**Other Authorities**

Defining and Delimiting the Exemptions for Executive, Administrative,
    Professional, Outside Sales and Computer Employees,
        69 Fed. Reg. 22,122 (Apr. 23, 2004) ................................ 13, 21, 22, 23

Wage and Hour Administrator's Interpretation FLSA2010-1,
        2010 WL 1822423 (Mar. 24, 2010)     15, 22

## <u>REASONS WHY ORAL ARGUMENT NEED NOT BE HEARD</u>

Although the Acting Secretary of Labor will gladly participate in oral argument to answer questions the Court might have, she believes that oral argument is not necessary as the issues presented may be decided on the parties' briefs.

# UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

JULIE A. SU, Acting Secretary of Labor, United States Department of Labor,
Plaintiff - Appellee,

v.

F.W. WEBB COMPANY,
Defendant - Appellant.

On Appeal From The United States District Court for the District of
Massachusetts

## BRIEF OF THE ACTING SECRETARY OF LABOR

Plaintiff-Appellee the Acting Secretary of Labor, United States Department of Labor ("Department") submits this brief in response to the brief filed by Defendant-Appellant F.W. Webb Company ("Webb"). This Court should affirm the district court's conclusion that Webb misclassified its Inside Sales Representatives ("Sales Representatives") as exempt administrative employees and violated the Fair Labor Standards Act ("FLSA") by failing to pay them overtime compensation and keep records required for non-exempt employees.

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction over this case pursuant to sections 16(c) and 17 of the FLSA, 29 U.S.C. 216(c) & 217, and 28 U.S.C. 1331 (federal question jurisdiction) and 1345 (jurisdiction over suits by the United States).

This Court has jurisdiction pursuant to 28 U.S.C. 1291. The district court entered an order on judgment on August 30, 2023. Appendix ("APX")738–744. Webb filed a timely notice of appeal on September 22, 2023. APX-776; *see* Fed. R. App. P. 4(a)(1)(B).

## STATEMENT OF THE ISSUE

Whether the district court correctly determined that Webb's Sales Representatives are not administrative employees exempt from the FLSA's overtime pay requirement because the undisputed facts show that the primary duty of the Sales Representatives is directly related to Webb's business purpose of making wholesale sales of its products.

## STATEMENT OF THE CASE

A. Relevant Statutory and Regulatory Provisions Regarding the Administrative Exemption

The FLSA generally requires that employees be paid an overtime premium of at least one and one-half times their regular rate of pay for each hour worked in excess of 40 in a single workweek. 29 U.S.C. 207(a)(1). When an employee is

covered by this requirement, the employer must keep records tracking the employee's work hours, among other things. 29 C.F.R. 516.2(a); *see also* 29 U.S.C. 211(c). The FLSA exempts from these overtime and recordkeeping requirements "any employee employed in a bona fide executive, administrative, or professional capacity … as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor]." 29 U.S.C. 213(a)(1).

To satisfy the administrative employee exemption: (1) the employee must be paid on a salary or fee basis at a certain salary level; (2) the employee's "primary duty" must be "the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (3) the employee's "primary duty" must "include[] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. 541.200(a). For an employee to fall under the exemption, all three prongs must be satisfied and the employer bears the burden of proof on each prong. *Walsh v. Unitil Service Corp*, 64 F.4th 1, 5 (1st Cir. 2023).[1]

As relevant here, in order to meet the second prong, the employee "must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing

---

[1] Because the Department did not seek summary judgment on the first and third prongs of the administrative exemption, ECF No. 64 at 10-16, they are not discussed further in this brief.

production line or selling a product in a retail or service establishment." 29 C.F.R. 541.201(a).

The regulations provide a non-exhaustive list of examples of work that can, under certain circumstances, directly relate to the management or general business of the employer. 29 C.F.R. 541.201(b) (work directly related to management or general business activities includes "functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.").

B. Statement of Facts

Webb is a for-profit wholesaler of plumbing, heating, cooling, pipes, valves, fitting, and related industrial products, fixtures, and equipment, located in Bedford, Massachusetts. APX-18 ¶ 10; APX-142 ¶ 10. Webb's primary business is making wholesale sales of these products to contractors, government organizations, and other industrial buyers. APX-203. Webb has over 100 storefront locations in nine states. APX-18 ¶ 11; APX-142 ¶ 11; APX-178. Webb generates its revenue from employees who sell directly to customers. APX-281. It employs three categories of sales employees: inside salespeople (*i.e.*, Sales Representatives), counter

salespeople, and outside salespeople. APX-182–183; APX-280–281. Webb employs more Sales Representatives than either counter salespeople or outside salespeople. APX-183; APX-220–221; APX-285.

During the relevant period, Webb employed more than 600 Sales Representatives, classifying them all as administrative employees exempt from the FLSA's overtime requirements. APX-182–184; APX-219. At least some of the Sales Representatives worked more than 40 hours in at least some workweeks during the relevant period, yet Webb did not pay FLSA overtime premiums to these Sales Representatives. APX-152–153. During the relevant period, Webb also did not keep complete records of all hours worked by the Sales Representatives (except for those assigned to stores located in the state of Maine, for whom Webb did keep such records). APX-153.

Sales Representatives interact directly with Webb's customers throughout the sales process, from a customer's initial contact to the delivery of the products that the customer purchases. APX-182–183; APX-189; APX-194–198; APX-204–205. Sales Representatives do not have any management duties and do not make policy decisions for Webb. APX-209; APX-213–214. Webb's job postings and position descriptions for Sales Representatives describe a Sales Representative's responsibilities as including processing and maintaining customer orders, attaining products and materials for delivery to customers, meeting and exceeding sales

goals, handling customer-services issues, and producing bids for customer approval. APX-286–293. Consistent with these responsibilities focused directly on sales, Webb's Sales Representative job postings and position descriptions indicate that Webb prefers to hire individuals with previous sales experience. *Id.* Webb's performance appraisals for Sales Representatives are also sales-focused, rating Sales Representatives based on their achievement of sales and profit goals, the number of "bids" or price quotes Sales Representatives provide to customers and the percentage of those bids that became completed sales, and the Sales Representatives' efforts in communicating with customers and following up on quotes that have not generated completed sales. APX-304–308. These annual performance appraisals directly impact Sales Representatives' compensation. APX-235–242.

Unlike for its counter salespeople, Webb expects Sales Representatives to possess knowledge and expertise about their sales areas in order to assist customers in identifying products that meet the goals of a specific project. *See, e.g.*, APX-504 ¶ 3, APX-509 ¶ 11. Webb does not charge customers consulting fees for the Sales Representatives' guidance in selecting products for a project; rather, such consulting is done in the context of making sales for Webb. APX-156–157. Webb provides Sales Representatives, and not counter salespeople, with discretion to deviate from Webb's pricing matrix. APX-409–414. Sales Representatives assist

customers with shipping and delivery issues after the customers have completed their order. APX-607 ¶ 17. Webb developed the unique Sales Representative role to distinguish itself from its competition. *See, e.g.*, APX-504 ¶ 3, APX-509 ¶ 11. Sales Representatives also support outside salespersons by addressing technical questions and providing information about particular products. APX-421–422. Additionally, Sales Representatives act as "Webb's eyes and ears on the market," learning about competitors and providing information to general managers that the managers use to develop marketing strategies. APX-407–408.

C. <u>Procedural Background</u>

After the Department's Wage and Hour Division began an investigation of Webb in October 2017, the Department filed this lawsuit on July 31, 2020, alleging that Webb misclassified the Sales Representatives as exempt administrative employees, resulting in violations of the overtime and recordkeeping requirements of the FLSA, and that Webb engaged in unlawful retaliation under the FLSA. APX-16. After completion of discovery, both parties filed motions for partial summary judgment. APX-35; APX-113. As detailed below, on June 16, 2023, the district court denied Webb's motion for partial summary judgment, granted partial summary judgment for the Department on its FLSA overtime and recordkeeping claims, and denied partial summary judgment for the Department on the FLSA

retaliation claim. APX-736–737.[2] Following the district court's summary judgment ruling, the court granted the parties' joint motion for entry of judgment that preserved Webb's right to appeal the summary judgment decision. APX-739.

D. Decision of the District Court

In granting partial summary judgment to the Department, the district court concluded that Webb misclassified the Sales Representatives as exempt administrative employees and violated the FLSA by not paying them overtime compensation and keeping appropriate records for them. APX-722–726.

The district court explained that the parties' dispute on the administrative employee exemption issue focused on the second prong under the Department's controlling regulation, namely, whether the Sales Representatives' "primary duty" is "'directly related to the management or general business operations'" of Webb or its customers. APX-720–721 (quoting 29 C.F.R. 541.200(a)(2)).[3] The district court detailed the relational analysis required by this Court's recent *Unitil* decision, which examines how the employee's primary duty relates to the employer's business purpose; *i.e.*, "whether an employee's primary duties are

---

[2] Because the Department has not appealed the denial of summary judgment of the retaliation claim, it is not discussed further in this brief.

[3] Webb has never raised, and thus waived, the argument that the Sales Representatives' primary duty is directly related to the management or general business operations of Webb's customers.

focused on carrying out the business's 'principal production activity' or on other 'ancillary' matters related to the business's overall operations and management." APX-721–722 (quoting *Unitil*, 64 F.4th at 7). Employees in the former category cannot qualify for the administrative employee exemption. APX-722.

The district court concluded that the Sales Representatives are not exempt administrative employees because "Webb's business purpose is to sell Webb's products, and the [Sales Representatives'] primary duty is to help sell Webb's products." APX-722. The court further concluded that, even crediting Webb's evidence concerning the Sales Representatives' primary duty, "a reasonable jury would be unable to determine that [the Sales Representatives'] work relates to Webb's management or general business operations." APX-723. In reaching this conclusion, the district court considered Webb's evidence related to the Sales Representatives' role advising customers, providing input regarding Webb's sales strategies, and providing a "higher level of service" to customers. *Id.* The district court concluded that all of these activities "facilitate[d]" the Sales Representatives' direct sale of Webb products to customers, and thus could not support a finding that the Sales Representatives' primary duty is administrative, rather than sales-focused. *Id.*

The district court detailed additional evidence showing that the Sales Representatives' primary duty is to sell Webb products, including the centrality of

direct sales responsibilities to Webb's job descriptions, job postings, performance evaluations, and compensation determinations for Sales Representatives. APX-724. The district court noted that "the job title Inside Sales Representative underscores" the sales-focused nature of the Sales Representative position. *Id.* It explained that the job title was "not determinative," but merely "a reflection of the [Sales Representatives'] duties and responsibilities," as other evidence in the record demonstrated. *Id.*, n.1.

## SUMMARY OF ARGUMENT

The district court correctly concluded that Webb's Sales Representatives do not qualify as administrative employees that are exempt from the FLSA's overtime pay requirement. As relevant here, the administrative employee exemption applies only to employees whose primary duty is directly related to the management or general business operations of the employer. As this Court recognized in *Unitil*, this determination requires a relational analysis, comparing the employee's primary duty to the employer's principal business purpose to determine whether the employee's primary duty is directly related to that business purpose, or is rather some ancillary duty related to the running or servicing of the business. 64 F.4th at 6–7.

Unlike Webb's brief, which failed to conduct this relational analysis or even cite *Unitil*, the district court properly applied the *Unitil* test, correctly concluding

that the Sales Representatives' primary duty closely relates to Webb's business purpose of wholesale sales, rendering the administrative exemption inapplicable to the Sales Representatives. The additional tasks that the Sales Representatives do, such as consulting with customers, helping with logistics after the purchase, and providing information to others within Webb regarding products and market trends all go towards facilitating sales. Contrary to Webb's arguments, the district court properly considered the totality of the evidence concerning the Sales Representatives' primary duty in reaching its conclusion that no reasonable jury making all inferences in Webb's favor could find that their primary duty directly relates to the running or servicing of Webb's business. The Sales Representatives' additional tasks simply do not change the fact that their primary duty is selling Webb's products to customers.

Webb's argument that this Court's decision in *Marcus v. American Contract Bridge League*, 80 F.4th 33 (1st Cir. 2023), mandates reversal is incorrect. *Marcus* did not change the legal standard applicable to the FLSA administrative exemption; rather, it applied the relational analysis from *Unitil* to the employees and business at issue in the case. *Id.* at 47–49. Application of the *Unitil* relational analysis to the record here supports affirming the district court's conclusion that the Sales Representatives are not exempt administrative employees.

This court employs a *de novo* standard of review of a district court's grant of summary judgment. *Unitil*, 64 F.4th at 5.

ARGUMENT

THE DISTRICT COURT CORRECTLY DETERMINED THAT THE SALES REPRESENTATIVES ARE NOT EXEMPT ADMINISTRATIVE EMPLOYEES

A.   The Undisputed Facts Show that the Sales Representatives' Primary Duty Directly Relates to Webb's Business Purpose

1. As outlined above, the second prong of the administrative exemption requires the employer to show that the employee performs work "directly related to assisting with the running or servicing of the business." 29 C.F.R. 541.201(a). In *Unitil*, this Court instructed courts to conduct a relational analysis to determine if an employee performs such work. 64 F.4th at 6. For this analysis, courts must identify the employee's primary duty. *Id.* An employee's primary duty is "the principal, main, major or most important duty that the employee performs … based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." 29 C.F.R. 541.700(a); *see also Unitil*, 64 F.4th at 6 (citing 29 C.F.R. 541.700). The court must then "determine whether that duty is directly related to 'running or servicing of the business.'" *Unitil*, 64 F.4th at 6. This Court explained that "it is often useful to identify and articulate the business purpose of the employer," meaning the product or service the company offers to

12

the public or the business's core function or revenue source. *Id.* at 6–7. Having identified both the employee's primary duty and the employer's business purpose, the court should compare the primary duty to the business purpose to determine if the primary duty "directly relates to the business purpose or, conversely, is directly related to the 'running or servicing of the business.'" *Id.* at 7 (quoting 29 C.F.R. 541.201(a)). "If the [employees'] primary duties relate to [the employer's] business purpose, in that they produce the product or provide the service that the company is in business to provide, the second prong is not satisfied." *Id.* at 7.

This Court noted that this relational analysis derived from the "administrative-production dichotomy," a conceptual framework that differentiates exempt administrative work from non-exempt work by assessing whether the employee's primary duty is ancillary or directly related to the business's principal productive activity. *Unitil*, 64 F.4th at 7 (citing *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 9–10 (1st Cir. 1997)). The administrative-production dichotomy "itself is not dispositive," because although all production work is non-exempt, not all non-production-type work qualifies for the administrative exemption. *Id.* (citing *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 123 (4th Cir. 2015)); *see also* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22,122, 22,141 (Apr. 23, 2004) ("2004 Part 541 Rule") (explaining that the administrative-

production dichotomy is "only determinative if the work falls squarely on the production side of the line") (internal quotation and citation omitted).

2. Applying these well-established FLSA principles and the *Unitil* relational analysis to the undisputed facts of this case, the district court correctly concluded that Sales Representatives are not exempt administrative employees. The Sales Representatives' primary duty—selling Webb's products to customers—is the very service that Webb is in business to provide. Looking at all the facts, "with the major emphasis on the character of the employee's job as a whole," 29 C.F.R. 541.700(a), no reasonable jury making inferences in Webb's favor could conclude that the Sales Representatives' primary duty is directly related to the running or servicing of Webb's business.

The record shows, as the district court concluded, that "Webb's business purpose is to produce wholesale sales of its products to its customers." APX-722. Webb generates its revenue from its sales employees' completing sales to customers, and not from fees for any consulting or advising work. APX-156–157; APX-281. Accordingly, if the Sales Representatives' primary duty is closely related to producing wholesale sales of Webb's products to its customers, then Sales Representatives cannot be exempt administrative employees.

There is no genuine dispute that the essential character of the Sales Representative role is directly related to producing wholesale sales of Webb's

products to its customers. Webb's job postings and position descriptions for Sales Representatives make clear that previous sales experience is preferred. APX-286–293; *see also* Wage and Hour Administrator's Interpretation FLSA2010-1, 2010 WL 1822423, at *5 (Mar. 24, 2010) (identifying "the employee's job description" and "employer's qualification for hire" as "factors that should be considered in determining whether an employee's primary duty is making sales") (collecting cases). The Sales Representatives' duties are principally sales-focused, including producing price quotes for customers, meeting and exceeding sales goals, processing customer orders, procuring products to fulfill customer orders, and managing customer deliveries. APX-286–293. Webb also evaluates the performance of Sales Representatives and sets their compensation based on their success in providing price quotes to customers, completing sales transactions, and maintaining communication with customers to turn as many price quotes as possible into completed sales. APX-304–308; APX-235–242; *see also Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1054 (7th Cir. 2020) (denying summary judgment on administrative exemption to employer whose primary revenue generator was sales of advertisements where evidence showed, among other things, employees were subject to advertisement sales quotas).

While Webb requires Sales Representatives to have more knowledge and expertise than other sales employees so the Sales Representatives can assist

customers in selecting Webb products to purchase, Webb acknowledges that this is a central part of its efforts to differentiate itself in wholesale sales from its competitors. *See, e.g.*, APX-504 ¶ 3, APX-509 ¶ 11. Further indicating that Sales Representatives play a central role in Webb's principal sales strategy, Webb employs more Sales Representatives than all other types of sales employees combined. APX-183; APX-220–221; APX-285. In essence, as the district court noted, "even under Webb's own characterization, the reason [Webb] employ[s] [Sales Representatives] is to better help customers buy the Webb products they need." APX-723.

Webb attempts to distinguish Sales Representatives from the other categories of sales employees—counter salespersons and outside salespersons—based on what Webb now calls the Sales Representatives' "customer consulting, internal advising, and post-sale concierge duties." Webb Br. at 15. Webb describes in detail how Sales Representatives use their knowledge and expertise to understand what customers need and advise them on what Webb products to buy to meet those needs (*i.e.,* customer consulting). *Id.* at 5-13. Sales Representatives provide information to Webb sales and management employees to help those employees complete sales and make strategic decisions (*i.e.,* internal advising). *Id.* at 13-14. Sales Representatives also work with customers after they have made

their purchases by handling shipment, delivery, and related issues with the purchased products (*i.e.,* post-sale concierge). *Id.* at 14-15.

Webb fails, however, to articulate how these sales-related duties transform the Sales Representative position from a sales role into one directly related to the management of Webb's business. While Webb devotes a good portion of its brief to attempting to cast these as stand-alone tasks rather than sales-related tasks, the level of detail that Webb provides about these tasks does not change the fact that they are ultimately sales related. It likewise does not change the fact that Webb's business purpose is wholesale sales. Webb does not generate any revenue when, for example, Sales Representatives consult with customers on products or help customers design projects so the customers can determine which products to purchase from Webb. Rather, Webb generates its revenue solely when it sells products to customers. APX-281. Webb even admits that Sales Representatives do not have the primary duty of performing their customer consulting and support work "outside the context of making sales or sales that had been made." APX-156.

The Third Circuit's decision in *Martin v. Cooper Electric Supply Company*, 940 F.2d 896 (3d Cir. 1991), is particularly instructive on this point, and the district court did not error in relying on it, APX-722–723. There, the Third Circuit held that inside salespersons at a wholesale electrical products company had the primary duty of making sales, and thus were not exempt administrative employees.

*Cooper Elec.*, 940 F.2d at 903–05. Like the Sales Representatives here, the inside salespersons in *Cooper Electric* did work beyond merely taking orders from customers—they advised customers on which products to buy and negotiated pricing with customers. *Id.* at 904–05. Regardless, the Third Circuit concluded that these additional duties did not change the fundamental sales-nature of the inside salespersons' role, as these duties were all part of the company's sales production operation. *Id.* ("[T]hese activities are part and parcel of the activity of producing sales.") (internal quotation marks omitted). The Third Circuit explicitly rejected the employer's argument that advising customers on additional products that may be necessary or negotiating with customers made inside salespersons promoters or marketeers and therefore administrative employees because, the Third Circuit reasoned, such efforts are "in the context of discrete, particularized sales transactions." *Id.* at 905.

As the Third Circuit explained, "servicing" an employer's business within the meaning of the regulation "denotes employment activity *ancillary* to an employer's principal production activity, whether that be production of a commodity or commodities, goods or services, or as in the case here, production of wholesale sales." *Cooper Elec.*, 940 F.2d at 904-05. (emphasis in original, internal quotation marks omitted). Where the employer's business purpose is wholesales sales (*i.e.*, the employer "produces" wholesale sales), employees whose primary

duty is making wholesale sales are producing the very thing that the employer produces; they are not performing an activity that is ancillary to that production. Consequently, they are not administrative employees. *Id.*

Likewise here, the Sales Representatives' customer consulting, internal advising, and concierge work are all part of the Sales Representatives' sales production work, and thus do not transform the nature of their role into an administrative position. Indeed, to the extent that Webb has its Sales Representatives incorporate such activities into their sales work, that simply makes them better salespeople—thereby generating more revenue for Webb and furthering its business purpose of producing wholesale sales. *Cf.* APX-156 (Webb's admissions that Sales Representatives do not have the primary duty of providing customer consulting or support services "outside the context of making sales").

3. Webb advances several arguments in attempting to discount the relevance of *Cooper Electric* to this case. Webb Br. at 29–33. None are persuasive.

3a. Webb claims that the district court relied on *Cooper Electric* as establishing an "irrevocable rule" that all employees with sales-related job titles or who perform sales-related work at wholesale companies cannot qualify for the administrative exemption. Webb Br. at 29–30. Webb is mischaracterizing the district court's opinion. The district court did not treat *Cooper Electric* as

establishing a categorical rule and, based on such a rule, blindly conclude that Webb's Sales Representatives do not satisfy the second prong of the administrative exemption. Rather, the district court (properly) treated *Cooper Electric* as informative and persuasive, especially given the factual similarities, and considered and rejected Webb's attempt to distinguish it. APX-722–725. In fact, in carefully comparing *Cooper Electric* to the instant case, the district court did exactly what Webb claims is needed in an exemption case—it conducted a "rigorous analysis of actual job duties," Webb Br. at 30, and compared those duties to Webb's business purpose to determine whether the Sales Representative's primary duty is directly related to running or servicing Webb's business, as required by this Court's decision in *Unitil* and the Department's regulations.[4]

3b. To the extent that Webb is arguing that *Cooper Electric* did, in fact, establish such a categorical rule and that such a rule is no longer valid in light of regulatory changes promulgated since *Cooper Electric*, Webb Br. at 30-31, Webb is mischaracterizing both *Cooper Electric* and the relevant regulatory changes. Nothing in the Third Circuit's lengthy analysis of the applicability of the

---

[4] Webb's argument regarding job titles is confused and inaccurate. First, Webb's contention notwithstanding, Webb Br. at 30, *Cooper Electric* did not rely on job titles. Second, the district court here explicitly disclaimed the argument Webb attributes to it; the court acknowledged that the "Inside Sales Representative" job title was "not determinative," but merely "a reflection of the [Sales Representatives'] duties and responsibilities," as evidenced in the record. APX-724 & n.1.

administrative exemption to the wholesale company's inside salespersons purported to establish any categorical rule. Moreover, nothing in the 2004 Part 541 Rule changed the proper analysis from that employed in *Cooper Electric*. The 2004 Part 541 Rule made clear that the Department reverted to using language from the then-existing regulation to avoid implying a categorical exclusion from the administrative exemption for "any employee engaged in any sales, advertising, marketing or promotional activities." 69 Fed. Reg. at 22,140. Thus, under both the regulations in place when *Cooper Electric* was decided and the current regulations, there was not and is not a categorical rule that salespersons can never be exempt administrative employees. As *Unitil* makes clear, whether an employee whose primary duty is sales can qualify for the administrative exemption depends on the connection between that primary sales duty and the employer's business purpose. 64 F.4th at 6.

Rather than changing the relevant analysis, the 2004 Part 541 Rule kept in place the analysis from the prior regulation and case law. 69 Fed. Reg. at 22,145–46 (discussing the application of the Rule to employees involved in the sale of financial products). The preamble to the 2004 Part 541 Rule explicitly endorsed this Court's decision in *John Alden*, and thereby implicitly endorsed the parts of *Cooper Electric* favorably quoted by the *John Alden* Court, for the distinction between exempt employees who promote "'customer sales generally,'" and non-

exempt employees who engage in "'routine selling efforts focused simply on particular sales transactions.'" *Id.* at 22,145 (quoting *John Alden*, 126 F.3d at 10 (quoting *Cooper Electric*, 940 F.2d at 905)). Both the Department and several federal courts have followed the analysis of *Cooper Electric* in applying the 2004 Part 541 Rule, showing that the Rule did not make any relevant substantive changes to the primary duty analysis under this prong of the administrative exemption. *See, e.g.*, Wage and Hour Administrator's Interpretation FLSA2010-1, 2010 WL 1822423, at *4-5 (stating that *Cooper Electric*'s evaluation of the status of inside salespersons "is instructive" in applying the 2004 Part 541 Rule to distinguish between exempt "servicing [of] the business" and non-exempt "routine sales work"); *Hendricks v. Total Quality Logistics, LLC*, No. 1:10CV649, 2023 WL 6255723, at *14 n.12 (S.D. Ohio Sept. 26, 2023) (discussing the changes in the 2004 Part 541 Rule and concluding the change "does not affect" *Cooper Electric*'s holding that the salespersons were not exempt administrative employees); *Smith v. Johnson & Johnson*, No. CIV No. 06-4787(JLL), 2008 WL 5427802, at *9-10 (D.N.J. Dec. 30, 2008), *order aff'd, appeal dismissed*, 593 F.3d 280 (3d Cir. 2010) (discussing the changes in the 2004 Part 541 Rule and concluding that *Cooper Electric* "should still guide the [c]ourt's analysis of the administrative exemption").

3c. Webb's argument that the 2004 Part 541 Rule eliminated the relevance of the administrative-production dichotomy, rendering *Cooper Electric* inapplicable, fares no better. While Webb is correct that the administrative-production dichotomy discussed in *Cooper Electric* is not always dispositive, Webb Br. at 32–33, the district court's use of the dichotomy was appropriate and consistent with the current regulations. In the 2004 Part 541 Rule, the Department explained that "the dichotomy is still a relevant and useful tool in appropriate cases to identify employees who should be excluded from the exemption." 2004 Part 541 Rule, 69 Fed. Reg. at 22,141; *see also id.* (work that "falls squarely on the production side of the line" does not qualify as exempt administrative work) (quoting *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1127 (9th Cir. 2002)). This Court similarly acknowledged that the administrative-production dichotomy can be a useful tool in conducting the relational analysis. *Unitil*, 64 F.4th at 7 (citing *Calderon*, 809 F.3d at 123, and 2004 Part 541 Rule, 69 Fed. Reg. at 22,141).

Where, as here, the evidence shows that the character of the Sales Representative role as a whole focuses on producing sales of Webb's products, the administrative-production dichotomy is useful and points strongly towards non-exempt status. Sales Representatives carry out the very function that Webb is in business to do, *i.e.*, make wholesale sales, and thus they cannot qualify for the administrative exemption. No reasonable jury viewing Webb's evidence of the

Sales Representatives' sales work, even if it includes customer consulting, internal

advising, or concierge work, could conclude that the Sales Representatives'

primary duty was directly related to assisting with the running or servicing of

Webb's business. The district court's ruling was thus correct and should be

affirmed.

3d. Lastly, contrary to Webb's argument otherwise, Webb Br. at 31, *Cooper*

*Electric* is not rendered irrelevant because of *Encino Motorcars, LLC v. Navarro*,

584 U.S. --, 138 S. Ct. 1134 (2018). *Encino* abrogated the principle of statutory

interpretation that FLSA exemptions in 29 U.S.C. 213 should be narrowly

construed and adopted instead the principle that 29 U.S.C. 213 exemptions should

be given a fair reading. *Id.* at 1142. While *Cooper Electric* cited the then-

applicable principle that FLSA exemptions should be narrowly construed, 940 F.3d

at 900, the detailed analysis in *Cooper Electric* is entirely consistent with *Encino*'s

fair-reading standard and was not predicated on the narrow-construction principal.

Additionally, there is nothing to suggest (and Webb does not point to any

authority) that cases that mention the narrow-construction interpretive principle—

which was the law for over 70 years—must be disregarded. *See, e.g.*, *Isett v. Aetna*

*Life Ins. Co.*, 947 F.3d 122, 129 & n.21 (2d Cir. 2020) (recognizing *Encino*'s "fair

reading" instruction but continuing to rely on a prior case that referenced the

narrow-construction principle but also "provided a careful and fair reading of the

FLSA-implementing regulations relating to the professional exemption, as required by *Encino*"). Moreover, the district court here acknowledged *Encino* and the fair-reading principle that it established. APX-720. Thus, nothing about *Encino* suggests the district court erred here.

4. Webb's argument that reversal is warranted because the district court misapplied the summary judgment standard, Webb Br. at 33–36, is meritless. The district court's statement and application of the summary judgment standard was appropriate and consistent with this Court's jurisprudence. As the district court stated, in ruling on the Department's motion for partial summary judgment, the district court was required to make all inferences in favor of Webb, and grant the Department's motion only if no reasonable jury could rule in Webb's favor. APX-718; APX-726; APX-734.

Webb takes issue with the district court's conclusion that Webb's evidence of the Sales Representatives' additional duties did not raise a triable issue concerning the Sales Representatives' primary duty, claiming that the district court improperly weighed or discounted the evidence that favored Webb. Webb Br. at 34–35. However, nothing in the district court's opinion suggests it weighed or discounted any of Webb's evidence; rather, the district court examined Webb's evidence of the Sales Representatives' additional duties, APX-709–710, APX-723, and correctly concluded that Webb failed to present evidence that warranted an

inference that the Sales Representatives' primary duty is to assist in the running or servicing of Webb's business. APX-723–726. As discussed in more detail below, this Court concluded in *Marcus* that, where there is substantial evidence that employees are focused on their employer's principal productive activity, and all of the employees' collateral duties "go towards" that productive activity, it is appropriate to grant summary judgment against the employer. 80 F.4th at 47–48 (reversing grant of summary judgment for employer and denial of summary judgment for plaintiffs even though plaintiffs had additional duties beyond those that directly carried out the employer's core business purpose).

Webb cannot defeat summary judgment simply by presenting evidence that Sales Representatives engage in work besides taking and fulfilling orders from customers. Rather, it must produce sufficient evidence to warrant a finding that the Sales Representatives "are part of the management structure of [Webb] or that they assist 'with the running or servicing of the business.'" *Marcus*, 80 F.4th at 48 (quoting 29 C.F.R. 541.201(a)). The district court properly concluded that Webb failed to make this showing.

B. *Marcus* Is Consistent with the District Court's Conclusion and Does Not Warrant Reversal

Instead of conducting the relational analysis required under *Unitil*, Webb devotes much of its argument to its contention that this Court's decision in *Marcus* "mandates reversal" because *Marcus* held that employees who "spent

25% of their time engaging in activities 'designed to ensure … satisfaction of [the business's] consumers'" were exempt administrative employees. Webb Br. at 20 (quoting *Marcus*, 80 F.4th at 48–49). Webb makes detailed analogies between some of the customer-service work of a subset of the employees at issue in *Marcus* (Field Supervisors and Area Managers) and Webb's Sales Representatives. *Id.* at 25–29. However, Webb misinterprets *Marcus* and engages in the same type of simple analogizing of job duties rejected by this Court in *Unitil*. Far from mandating reversal, *Marcus* demonstrates that the district court correctly applied the *Unitil* relational analysis and bolsters the conclusion that the Sales Representatives are not exempt administrative employees.

Unlike Webb, the *Marcus* Court followed *Unitil*'s relational analytical framework. The Court first identified the business purpose of the employer, the American Contract Business League ("ACBL"), as supervising and sanctioning bridge games at tournaments. *Marcus*, 80 F.4th at 47. The Court then examined the primary duties of different categories of employees: (1) Tournament Directors; (2) National Tournament Directors and Associate National Tournament Directors; and (3) Field Supervisors and Area Managers. *Id.* at 47–49.

For Tournament Directors, the Court noted that these employees, whose primary duty was to supervise bridge games at tournaments and whose work represented ACBL's largest source of revenue besides membership dues, provided

"the very service that ACBL is in the business of providing" and thus cannot be administrative employees. *Marcus*, 80 F.4th at 47 (citing *Unitil*, 64 F.4th at 7). *Marcus* thus confirmed that employees whose primary duty is carrying out the employer's business purpose cannot be exempt administrative employees.

For National Tournament Directors and Associate National Tournament Directors, the Court noted that they supervised bridge games at individual tournaments, but also had additional duties, such as training and mentoring employees and drafting tournament regulations. *Marcus*, 80 F.4th at 47. The Court concluded that these additional duties "all go towards producing an ACBL-sanctioned bridge tournament." *Id.* Thus, despite these employees' ancillary quasi-administrative duties, the Court held that "their primary duties amount to production work," rendering them non-exempt. *Id.* at 48. This conclusion that administrative-type duties did not change these employees' primary duties because they all directly furthered the employees' core production work is consistent with the district court's reasoning here. The Sales Representatives' customer consulting, internal advising, and post-sale concierge duties are all part and parcel of their core sales function and Webb's very business purpose is selling products, and thus the overall character of the Sales Representative role is non-exempt work producing sales.

The *Marcus* Court held that Field Supervisors and Area Managers, by contrast, were exempt administrative employees. *Marcus*, 80 F.4th at 48–49. However, the Court did not reach this conclusion, as Webb argues, simply because the employees performed customer-service related duties; rather, the Court noted that the evidence showed that these employees' primary duties were not the routine production activity of supervising games at particular tournaments, but the administrative activity of managing ACBL's general business. *Id.* The Field Supervisors and Area Managers played a markedly different role at individual tournaments than the non-exempt Tournament Directors and National Tournament Directors.  While they spent 75% of their time directing tournaments, "'the character of the employee's job as a whole' reveals that their primary duty does, in fact, relate to ACBL's management or general business operations." 80 F.4th at 48 (quoting 29 C.F.R. 541.200(a)). Instead of merely producing sanctioned bridge tournaments (ACBL's business purpose) like the non-exempt Tournament Directors and National Tournament Directors, the exempt Field Supervisors and Area Managers focused on general business operation activities like tournament organization, workforce supervision, and the development, implementation, and management of strategic and long-term processes and programs. *Id* at 48. Unlike the Field Supervisors and Area Managers, Webb's Sales Representatives do not supervise any of Webb's workforce, or develop,

implement, and manage Webb's strategic and long-term programs and processes. The Sales Representatives, like the non-exempt employees in *Marcus*, primarily focus on work closely related to Webb's business purpose, and thus they are not administrative employees.

This distinction between exempt administrative employees who manage a company's general operations, including managing sales and service processes, and non-exempt employees who primarily focus on carrying out the employer's core business purpose is well-founded in this Court's jurisprudence. *See Cash v. Cycle Craft Co. Inc.*, 508 F.3d 680, 685–86 (1st Cir. 2007) (holding employee was exempt where he worked to improve customer satisfaction generally by coordinating with employees in other departments who handled individual sales); *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 10 (1st Cir. 1997) (holding marketing representatives who did not work on particular sales, but promoted sales generally were exempt administrative employees) (citing *Cooper Elec.*, 940 F.2d at 904).

Finally, the key difference between ACBL's business purpose (sanctioning games of bridge at tournaments) and Webb's business purpose (selling products to customers) undermines Webb's analogical argument. The "high-level" customer-service-type work that the Field Supervisors and Area Managers performed, 80 F.4th at 48–49, was ancillary to ACBL's business purpose of sanctioning bridge

tournaments. By contrast, the Sales Representatives' customer-service related tasks (customer consulting, internal advising, and post-sale concierge tasks) further Webb's business purpose of selling products. When placed in the proper context of the *Unitil* relational analysis that compares an employee's primary duty with the employer's business purpose, the superficial similarities between the duties of the exempt employees in *Marcus* and the Sales Representatives fail to justify reversal of the district court's ruling. The district court's decision should thus be affirmed.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's decision granting the Department's motion for partial summary judgment on its FLSA overtime and recordkeeping claims.

Respectfully submitted,

SEEMA NANDA
Solicitor of Labor

JENNIFER S. BRAND
Associate Solicitor

RACHEL GOLDBERG
Counsel for Appellate Litigation

/s/ Joseph E. Abboud
JOSEPH E. ABBOUD
Attorney
U.S. Department of Labor
200 Constitution Avenue, N.W.
Room N-2716
Washington, D.C. 20210
(202) 693-5625
abboud.joseph.e@dol.gov

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume requirements of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,551 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type styles requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface (14-point Times New Roman font).

<div style="margin-left:40%">

s/  Joseph E. Abboud
JOSEPH E. ABBOUD
Attorney
Fair Labor Standards Division
U.S. Department of Labor
Office of the Solicitor
200 Constitution Avenue NW
Room N-2716
Washington, DC 20210
(202) 693-5625
abboud.joseph.e@dol.gov

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that on February 15, 2024, I electronically filed the

foregoing document with the United States Court of Appeals for the First Circuit

by using the CM/ECF system. I certify that the following parties or their counsel of

record are registered as ECF Filers and that they will be served by the CM/ECF

system:

Rachel B. Cowen
Henry Alexander Leaman
James M. Nicholas

 s/  Joseph E. Abboud
JOSEPH E. ABBOUD
Attorney
Fair Labor Standards Division
U.S. Department of Labor
Office of the Solicitor
200 Constitution Avenue NW
Room N-2716
Washington, DC 20210
(202) 693-5625
abboud.joseph.e@dol.gov