# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

JULIE A. SU, Acting Secretary of Labor, United States Department of Labor,

*Plaintiff-Appellee,*

v.

F.W. WEBB COMPANY,

*Defendant-Appellant.*

On Appeal From The United States District Court for the District of
Massachusetts
Case No. 1:20-cv-11450-AK

## F.W. WEBB COMPANY'S REPLY BRIEF

**MCDERMOTT WILL & EMERY LLP**
Rachel Cowen
444 West Lake Street
Chicago, IL 60606-0029
Tele: +1 312 372 2000
rcowen@mwe.com

James M. Nicholas
200 Clarendon Street
Boston, MA 02116
Tele: +1 617 535 4000
jnicholas@mwe.com

Henry Leaman
McDermott Will & Emery LLP
444 West Lake Street
Chicago, IL 60606-0029
Tele:  +1 312 984 3245
hleaman@mwe.com

Attorneys for Appellant
F.W. Webb

# TABLE OF CONTENTS

**INTRODUCTION**................................................................................1

    1.    *Marcus* Mandates Reversal. ................................................2

    2.    The District Court Misinterpreted the FLSA. .......................7

    3.    The District Court Misapplied the Summary Judgment Standard......15

**CONCLUSION**................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Burns v. Johnson*,
    829 F.3d. 1 (1st Cir. 2016)................................................................15

*Cash v. Cycle Craft Co Inc.*,
    508 F.3d 680 (1st Cir. 2007)...............................................................1

*Encino Motorcars, LLC v. Navarro*,
    584 U.S. 79 (2018).............................................................................8

*Hines v. State Room, Inc.*,
    665 F.3d 235 (1st Cir. 2011)...............................................................4

*Isett v. Aetna Life Ins. Co.*,
    947 F.3d 122 (2d Cir. 2020) ...............................................................9

*Kisor v. Wilkie*,
    588 U.S. …, 139 S. Ct. 2400 (2019)................................................11

*Marcus v. American Contract Bridge League*,
    80 F.4th 33 (1st Cir. 2023)......................................................*passim*

*Martin v. Cooper Electric Supply Co.*,
    940 F.2d 896 (3d Cir. 1991) ...................................................*passim*

*Pippins v. KPMG, LLP*,
    759 F.3d 235 (2d Cir. 2014) ........................................................9, 10

*Reich v. John Alden Life Ins. Co.*,
    126 F.3d 1 (1st Cir. 1997)...................................................................1

*Tolan v. Cotton*,
    572 U.S. 650 (2014).....................................................................2, 15

*Walsh v. Unitil Serv. Corp.*,
    64 F.4th 1 (1st Cir. 2023)..................................................................17

**Statutes**

29 U.S.C. § 213(a)(1) ........................................................................10, 14

**Other Authorities**

29 C.F.R. § 541.201 (2023) .......................................................5, 12, 13, 14

29 C.F.R. § 541.205 (1991) ......................................................12, 13, 14

29 C.F.R. § 541.700 (2023) .......................................................3, 12, 16

Bryan A. Garner et al., *The Law of Judicial Precedent* (2016) ..............................11

Defining and Delimiting the Exemptions for Executive,
    Administrative, Professional, Outside Sales and Computer
    Employees, 69 Fed. Reg. 22122-01 (Apr. 23, 2004), 2004 WL
    865626....................................................................11, 13, 14

Fed. R. Civ. P. 56 ................................................................2, 15, 16, 17

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA2010-1
    (Mar. 24, 2010), 2010 WL 1822423 ...................................................12

# INTRODUCTION

This case arises under the Fair Labor Standards Act ("FLSA"). The precise issue is the overtime exempt status of the Inside Sales Representatives ("ISRs") at F.W. Webb Company ("F.W. Webb"). The District Court resolved that issue at summary judgment upon the request of the Secretary of Labor ("Secretary").

Regrettably, the District Court stopped short (as does the Secretary's brief to this Court) with assertions that F.W. Webb earns revenues from sales and that the ISRs assist in the process of generating that revenue. Those glosses are legally insufficient to sustain summary judgment.[1]

Fuller analysis reveals that there are three separate and independent reasons to reverse the District Court's resolution of the overtime exempt status of ISRs on summary judgment:

**First**, this Court's recent decision in *Marcus v. American Contract Bridge League*, 80 F.4th 33 (1st Cir. 2023) (affirming summary judgment for employer on FLSA's administrative exemption regarding Field Supervisors and Area

---

[1] This Court's prior case law conclusively demonstrates that this is too little. *See, e.g.*, *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 5 (1st Cir. 1997) (holding that marketing representatives were exempt even though the representatives "generate [millions of dollars] in sales"); *see Cash v. Cycle Craft Co.,* 508 F.3d 680, 685 (1st Cir. 2007) (holding that a customer service job was exempt where the employer earned revenue from sales and the customer service position assisted in ensuring that the sales of motorcycles were properly completed).

Managers)—which was issued after the District Court's ruling—commands reversal.

**Second**, independent of *Marcus*, the District Court misinterpreted the FLSA by ignoring the current regulations and instead relying on an out-of-circuit decision rendered under earlier regulations: *Martin v. Cooper Electric Supply Co.*, 940 F.2d 896 (3d Cir. 1991).

**Finally**, the District Court impermissibly weighed facts on summary judgment rather than limit its evaluation as required under Fed. R. Civ. P. 56 to determining only whether there is a genuine issue for trial.  Plus, the District Court discounted F.W. Webb's evidence that demonstrated disputed material facts.  *Tolan v. Cotton*, 572 U.S. 650, 659 (2014) (per curiam) (vacating a grant of summary judgment where the trial court "failed properly to acknowledge key evidence offered by the party opposing that motion").

Each of these require reversal.

## 1. *Marcus* Mandates Reversal.

*Marcus v. American Contract Bridge League*, 80 F.4th 33 (1st Cir. 2023) demonstrates why summary judgment was improper in this case.  There, the employer ("ACBL") was in the business of running bridge tournaments.  *Id.* at 47–48.  There, although ACBL's Field Supervisors and Area Managers spent 75% of their time running ACBL tournaments, the remaining 25% of their time focused on

exempt activities, such as tasks "designed to ensure the . . . satisfaction of [the business's] consumers," and qualified those jobs for the FLSA's administrative exemption. *Id.* at 48–49.

Here, F.W. Webb's ISRs handle parallel activities. Like the employees in *Marcus*, ISRs have duties that are designed to ensure the satisfaction of F.W. Webb's customers. (*See, e.g.*, **APX-389–APX-390; APX-505 ¶ 4-5;** Webb Br. at 6–13). Like the employees in *Marcus*, ISRs also engage in high-level customer service responsibilities, including serving as the first point of contact for customers and maintaining effective relationships with customers. (*See e.g.,* **APX-505 ¶ 4-5; APX-507 ¶ 6; APX-596 ¶ 5; APX-520 ¶ 7; APX-522 ¶ 14;** Webb Br. at 6–13). And like the employees in *Marcus*, ISRs perform these duties to ensure the long-term integrity of F.W. Webb's business. (*See e.g.*, **APX-504 ¶¶ 3–4; APX-505 ¶ 5; APX-610 ¶ 5; APX-603 ¶ 6; APX-599 ¶ 16; APX-509 ¶ 11**).

In fact, ISRs have an even *better* claim for exempt status because F.W. Webb's ISRs spend between 50–95% of their time performing those exemption-qualifying duties. (**APX-619 ¶ 14; APX-554 ¶ 6; APX-604 ¶ 7; APX-508 ¶ 7; APX-599 ¶ 15; APX-520 ¶ 8; APX-549 ¶ 6**). 29 C.F.R. § 541.700(b) (noting that employees who spend "more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement").

Nothing in the Secretary's brief affects the impact of *Marcus*.

**A.**     The Secretary's brief asserts that ISRs are unlike the Field Supervisors and Area Managers in *Marcus* because ISRs do not "develop, implement, and manage Webb's strategic and long-term programs and processes." (Sec'y Br. at 29–30).  That fails on two separate levels.

Legally, that assertion misreads *Marcus* which held that "[t]he processes and programs *directly relate* to the running of ACBL and are significant to ACBL *because* they are designed to ensure the long-term integrity of bridge tournaments and satisfaction of ACBL's consumers."  80 F.4th at 48 (emphasis added).  The takeaway is this: work that is *designed* to ensure the satisfaction of the business's customers *directly relates to the running of a business*.  *Id.*

Factually, the record in this case confirms that ISRs *do* implement and manage such initiatives.  ISRs are at the forefront of the customer-service strategy that allows F.W. Webb to distinguish itself in the marketplace.   (**APX-504 ¶¶ 3–4; APX-505 ¶ 5;** *see* **APX-507 ¶ 6**; **APX-596 ¶ 5**).  ISRs work to accomplish the same objectives as their counterparts in *Marcus*: *i.e.*, to ensure the satisfaction of F.W. Webb's customers, to create long-term relationships with customers, and to distinguish F.W. Webb in the marketplace.

And, *Marcus* confirms that this is sufficient.  Citing *Hines v. State Room, Inc.*, 665 F.3d 235, 243 (1st Cir. 2011), *Marcus* reiterates that "working to 'establish long-term relationships, to keep clients happy and to maintain the overall reputation of

4

their employer[ ]' directly relates to management or general business operations." *Marcus*, 80 F.4th at 48 (citing *Hines*, 665 F.3d at 243).

**B.**     Failing there, the Secretary alternatively suggests that the "key difference" between ACBL's business purpose and F.W. Webb's business purpose undermines Webb's position because the customer service that Field Supervisors and Area Managers performed in *Marcus* was "ancillary" to sanctioning bridge tournaments, while the ISRs' customer service tasks here "further Webb's business purpose of selling products." (Sec'y Br. at 30–31).

But, that is a canard: *Marcus* never stated that the customer service responsibilities there were ancillary to sanctioning bridge tournaments or anything else. Rather, it held that those responsibilities "directly relate to ACBL's business operations." 80 F.4th at 49. And that is exactly what the controlling regulations require for exemption: "work directly related to the management or general business operations." 29 C.F.R. § 541.201(a).

What the Secretary's brief advances regarding "ancillary" is a misapprehension of that regulation, of the role of customer service, and of the case law. *Marcus* refutes the Secretary's corollary suggestion that the ISRs "primarily focus on carrying out the employer's core business purpose." (Sec'y Br. at 30). That ignores the true role of customer service, both for F.W. Webb's ISRs and ACBL's

Field Supervisors and Area Managers, and has zero impact on their ability to qualify for an FLSA exemption.

**C.**     Failing there too, the Secretary's brief suggests that ISRs are better compared to the other positions at ACBL that *Marcus* confirmed cannot qualify for exempt status: *i.e.,* Tournament Directors, National Tournament Directors, and Associate National Tournament Directors.  That is another dead end.

Tournament Directors only supervised bridge tournaments and, thus, are readily distinguishable.  *Marcus* noted no customer service responsibilities for this job, just tournament directing.  80 F.4th at 39, 47.  That limited role is what distinguishes those nonexempt positions from the properly exempt positions of Field Supervisors and Area Managers, who spent *25% of their time* doing exempt work. *Id.* at 48.

The Secretary fares no better appealing to the National and Associate National Tournament Directors.  While those employees had additional duties above tournament directing, what the Secretary leaves out is key: "National and Associate National Tournament Directors' responsibilities begin and end with the tournament they are working on."  *Id.* at 47–48.  In contrast, Field Supervisors and Area Managers handle tasks beyond producing the tournament and instead require them to do work "designed to ensure the *long-term* . . . satisfaction of ACBL's consumers."  *Id*. (emphasis added).  So too with ISRs, who continue to work with

customers with the intent that it benefits F.W. Webb beyond any individual sale. (*See, e.g.*, **APX-504 ¶ 3–4; APX-507 ¶ 6; APX-533 ¶ 13**).[2]

This false comparison in the Secretary's brief to the jobs at issue in *Marcus* also contains a glaring omission. ISRs do far and away more customer service work than the Field Supervisors and Area Managers did in *Marcus*. Where those employees dedicated only 25% of their time to exempt work, ISRs dedicate anywhere from 50% to 95%. (**APX-619 ¶ 14; APX-554 ¶ 6; APX-604 ¶ 7; APX-508 ¶ 7; APX-599 ¶ 15; APX-520 ¶ 8; APX-549 ¶ 6**). Given the exempt status of that 25% of work in *Marcus*, the ISRs are *a fortiori* exempt.

**In sum**, *Marcus* requires reversal.

## 2. The District Court Misinterpreted the FLSA.

The Secretary invited error in asking the District Court to apply *Martin v. Cooper Electric Supply Co.*, 940 F.2d 896 (3d Cir. 1991) and acknowledges that the

---

[2] ISRs' customer service responsibilities neither begin with nor end with a sale but may also occur concurrently with a sale. That does not make such responsibilities non-exempt. *Marcus* makes this clear: it noted that Field Supervisors and Area Managers engage in "high-level customer service-orientated responsibilities," which are "directly relate[d] to ACBL's business operations," even though they were done "[w]*hile directing tournaments*,"—the business's purpose. 80 F.4th at 48–49. Contrary to the Secretary's suggestion (Sec'y Br. at 19), the fact that the ISRs' primary duty—"[e]nsuring that the customers are satisfied *and will return to Webb* for their [respective] needs" (**APX-507 ¶ 6; APX-533 ¶ 13**)—does not universally occur "outside the context of making sales" poses no impairment to exempt status.

7

District Court treated *Cooper* as persuasive. (Sec'y Br. at 19–20). Indeed, the District Court cited *Cooper Electric* eleven times!

That is the invited error that now requires reversal.

Two separate and independent flaws confirm why it was reversible error to treat *Cooper Electric* as persuasive. That decision (A) predated the Supreme Court's rejection of the "narrow construction" rule that *Cooper Electric* applied and (B) relied on controlling regulations that have since been amended which, for purposes of the FLSA, is the equivalent of a statutory amendment.

A. *Cooper Electric* applied a "narrow construction" to the FLSA's administrative exemption. The Supreme Court has since explicitly forbidden applying a "narrow construction" to FLSA exemptions: "[b]ecause the FLSA gives no 'textual indication' that its exemptions should be construed narrowly, 'there is no reason to give [them] anything other than a fair (rather than a "narrow") interpretation.'" *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 88 (2018) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 363 (2012)).

Despite the blandishments in the Secretary's brief attempting to wish-away *Cooper Electric*'s reliance on this now-forbidden rule of construction (Sec'y Br. at 24), this is reversible error. The "narrow construction" rejected in *Encino Motorcars* was indeed central to the Third Circuit's analysis.

8

*Cooper Electric* announces its adherence to the narrow construction principle in the outset of its exemption analysis. 940 F.2d at 900. That opinion states point blank that FLSA exemptions should be "narrowly construed against the employers seeking to assert them," and that it will only apply the exemption "to those establishments *plainly and unmistakably within their terms and spirit.*" *Id.* (emphasis added) (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).

More than just name-dropping the "narrow construction," the Third Circuit reiterated this now-condemned approach as its basis for rejecting specific aspects of Cooper Electric's arguments. *Id.* at 904 (Cooper Electric's "narrow view of 'production' under the regulation is at odds with the principle that exemptions from the Act's requirements are to be narrowly construed."). Inescapably, *Cooper Electric* fails to survive *Encino Motorcars*.

Disingenuously, the Secretary's brief asserts that there is nothing to suggest that cases that "mention" the narrow-construction interpretive principle must be disregarded. (Sec'y Br. at 24). But, that suggestion impermissibly conflates cases which "mention" the narrow construction but grant exempt status with cases relying on the narrow construction to deny exempt status.

This conflation is evident in the Secretary's proffer of *Isett v. Aetna Life Ins. Co.*, 947 F.3d 122, 129 & n.21 (2d Cir. 2020). *Isett* relied on a prior case, *Pippins v. KPMG, LLP*, which cited the narrow-construction principle. *Isett,* 947 F.3d at 129

9

n.21; *Pippins v. KPMG, LLP*, 759 F.3d 235, 238 (2d Cir. 2014). But, unlike *Cooper Electric*, the persuasive value of *Pippins* was unaffected by *Encino Motorcars* because *Pippins* found the FLSA exemptions satisfied. *Pippins*, 759 F.3d at 237–38.

Finding that a job meets an FLSA exemption under a narrow construction is far different than finding that a job fails to meet that exemption. The former guarantees that *Encino Motorcar*'s "fair reading" standard would automatically be met. The inverse requires reversal: cases holding that a job fails to satisfy the higher "narrow construction" standard fail to speak to the question of whether *Encino Motorcar*'s "fair reading" standard could be satisfied.

**B.** The FLSA grants overtime exempt status to "any employee employed in a bona fide executive, administrative, or professional capacity . . . (**as such terms are defined and delimited from time to time by regulations of the Secretary** . . . )." 29 U.S.C. § 213(a)(1) (emphasis added). As a result, each revision of the applicable regulations operates as a statutory amendment.

This case is controlled by the Secretary's current regulations, which are critically different than those in effect when *Cooper Electric* was decided in 1991. The Secretary's brief acknowledges that the controlling regulations have changed (Sec'y Br. at 21) and offers false reassurance: "nothing [in the current regulations]

changed the proper analysis from that employed in *Cooper Electric*" and, thus, from that employed by the District Court here.

That reassurance is an empty promise. There is a fundamental difference between the Secretary's published interpretations in the Federal Register (which are controlling) and those of her litigation team advanced in briefs (which are entitled to zero deference). *Kisor v. Wilkie*, 588 U.S. …, …, 139 S. Ct. 2400, 2417 (2019) ("[A] court should decline to defer to a merely 'convenient litigating position . . . .'"). And, the amended regulations illustrate why *Cooper Electric* has been superseded.

**Amendment No. I:** The administrative-production dichotomy, which was the central focus of *Cooper Electric,* has now been disowned: "neither do we believe that the dichotomy has ever been or should be a dispositive test for exemption." Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122-01, 22141 (Apr. 23, 2004), 2004 WL 865626. Indeed, the words "administrative . . . as distinguished from production" have been excised from the regulations:[3]

---

[3]  None of the Secretary's cited authorities (Sec'y Br. at 22) vindicate resurrecting this now-banished dichotomy. The cited portions of the Secretary's district court cases focus on the deletion of "substantial importance" (see Amendment No. IV, *infra* p.13–14) rather than the administrative-production dichotomy and offer only abbreviated conclusions sans analysis. *Cf.* Bryan A. Garner et. al., *The Law of*

11

| _Cooper Electric_ Regulation | Current Regulation |
|---|---|
| The phrase "directly related to management policies or general business operations of his employer or his employer's customers" describes those types of activities relating to the **administrative** operations of a business **as distinguished from "production"** or, in a retail or service establishment, "sales" work. | The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment. |
| 29 C.F.R. § 541.205(a) (1991) (emphasis added) | 29 C.F.R. § 541.201(a) (2023) (emphasis added) |

**Amendment No. II**:  Because that dichotomy had diverted attention from actual job content, the definition of "primary duty" was completely rewritten to require fact-specific analysis: "Determination of an employee's primary duty must be **based on all the facts in a particular case**, with the major emphasis on the character of the employee's job as a whole."   29 C.F.R. § 541.700(a) (2023) (emphasis added).  And, as made clear in F.W. Webb's opening brief (Webb Br. at

_Judicial Precedent_ 172 (2016) ("[A]n opinion that states a legal rule but doesn't explain how that rule applies to the case before the court is unlikely to persuade later courts that aren't bound by the decision.").  And, the Deputy Administrator's March 24, 2010, letter, U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA2010-1 (Mar. 24, 2010), 2010 WL 1822423, fails to acknowledge (much less reckon with) the published disowning of the administrative-production dichotomy in the 2004 regulatory amendments quoted in Amendment No. I, _supra_ text accompanying note 3.

34–35), the record facts on what ISRs do in their jobs (including the fact that the bulk of their time is devoted to customer service) went unnoticed and unappreciated in the District Court's analysis.

**Amendment No. III**: Further distancing from *Cooper Electric's* attempt to create a universal rule for sales-related work for wholesalers, the current regulations disclaim any intent to exclude non-retail sales personnel from qualifying as administrative exempt employees:

> Commenters state that deletion of the words "retail or service establishment" could be interpreted as denying the administrative exemption to any employee engaged in any sales, advertising, marketing or promotional activities. Because no such categorical change was intended, or is supported by current case law, the Department has restored the language from the current regulations.

69 Fed. Reg. at 22140.

**Amendment No. IV:** *Cooper Electric* also relied on the "substantial importance" test to reject overtime exempt status. 940 F.2d at 905–06 ("We hold as a matter of law that Cooper's inside salespersons do not perform 'work of substantial importance . . .' within the meaning of 29 C.F.R. § 541.205(a) and (c)."). But, the current regulations have abandoned that "substantial importance" test altogether:

| *Cooper Electric* Regulation | Current Regulation |
| --- | --- |
| In addition to describing the types of activities, the phrase [directly related to the management policies or general business operations of his employer] limits the exemption to persons who | The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must |

13

| | |
|---|---|
| perform work of *substantial importance to the management or operation of the business of his employer or his employer's customers*. | perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment. |
| 29 C.F.R. § 541.205(a) (1991) (emphasis added) | 29 C.F.R. § 541.201 (2023) (no substantial importance requirement); 69 Fed. Reg. at 22142 ("As discussed above, the Department has decided to eliminate the proposed 'position of responsibility' requirement. Thus, the final rule deletes proposed section 541.202 defining 'position of responsibility,' proposed section 541.203 defining 'substantial importance,' and proposed section 541.204 defining 'high level of skill or training.'") |

**In sum,** the controlling legal tests under 29 U.S.C. § 213(a)(1) shifted not in a stylistic fashion but substantively and not on a single point but on multiple points since 1991 when *Cooper Electric* was decided. The Secretary's brief is unfaithful to the statute; so too is the District Court's analysis tracking *Cooper Electric* (and thus the 1991 law) instead of the current regulations. Under the FLSA, employers are entitled to have their current compliance with the FLSA tested by current law, not the law in 1991.

**3.     The District Court Misapplied the Summary Judgment Standard.**

The Secretary's brief suggests that there is no need to look under the hood because the District Court dutifully recited that Rule 56 requires making all inferences in favor of the non-moving party. (Sec'y Br. at 25). That brief cites no authority for immunizing summary judgment decisions from appellate review as long as there is such a recital because there are none.

Here, the reversible error lies not in the District Court's failure to recite the applicable standards. Rather, it lies in its failure to adhere to their commands: *e.g.,* the obligation to avoid weighing evidence (*Burns v. Johnson*, 829 F.3d. 1, 8 (1st Cir. 2016)); the obligation to determine only whether there is a genuine issue for trial (*id*.); and the obligation to avoid "fail[ing] to credit evidence that contradicted some of its key conclusions." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam).

The Secretary's brief neither disputes nor distinguishes that case law. So, its pious reassurances (for all of three paragraphs, with no new case law and no reference to the actual evidence in dispute) seems designed to distract this Court from looking at these flaws in the District Court's decision. But, those flaws remain.

Despite having acknowledged that Rule 56 requires **all inferences** in favor of F.W. Webb (Sec'y Br. at 25) and that sales-personnel cannot be categorically excluded from exempt status (Sec'y Br. at 21), the Secretary reneges on both by suggesting that "there is substantial evidence" in its favor. (Sec'y Br. at 26). That

is an admission that summary judgment is improper; "substantial evidence" is far less than "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

Despite having acknowledged that the FLSA exemption analysis must be "based on **all the facts** in a particular case" (Sec'y. Br. at 12 (emphasis added)), there is nothing but silence in the Secretary's brief to defend the District Court's failure to do so. The record confirms that the bulk of ISRs' time is devoted to customer service duties as consultants, advisors, and concierges (Webb Br. at 11–12): a key factor under the controlling regulations. 29 CFR § 541.700(a) (primary duty requires consideration of "the amount of time spent performing exempt work"). Yet, the District Court dismissed the evidence explicating their actual duties (Webb Br. at 34–35) and instead impermissibly rendered its own factual findings without regard to that contrary evidence (*e.g.*, "ISRs are *ultimately* valued and compensated for their ability to assist customers in purchasing Webb's products" (**APX-724** (emphasis added)).

Despite having asserted that one of the key questions is the **primary duty** of the ISRs (Sec'y Br. at 14), there is nothing but silence in the Secretary's brief to defend the District Court's fact-finding in deciding that disputed question of fact. While there was substantial evidence that the primary duty of ISRs is "[e]nsuring that the customers are satisfied *and will return to Webb* for their [respective] needs" (**APX-507 ¶ 6 (emphasis added); APX-533 ¶ 13**), the District Court impermissibly

16

made contrary factual findings, concluding that the ISRs' primary duty was instead "to help sell Webb's products." (**APX-722**). That contravenes Rule 56; indeed, the Secretary's favorite case, *Cooper Electric* (which was decided only after a trial on the merits) confirms that primary duty is a question of fact for trial: "findings as to what work constitutes an employee's 'primary duty'" is a "factual inference [drawn] from historical facts." 940 F.2d at 900.[4]

**In sum**, the District Court's approach to summary judgment is fatally flawed.

## CONCLUSION

This Court should reverse the District Court's summary judgment decision and remand for trial. That reversal is warranted for each of three separate reasons: (1) this Court's decision in *Marcus v. American Contract Bridge League*; (2) the District Court's misinterpretation of the FLSA's standard for exemption based on its adherence to *Martin v. Cooper Electric Supply Co.*; and (3) the District Court's impermissible weighing of facts on summary judgment.

---

[4] This is reinforced by *Walsh v. Unitil Serv. Corp.*, 64 F.4th 1 (1st Cir. 2023), where this Court concluded that the issue of primary duty in that FLSA case too was a question of fact that required a jury trial. There, as here, "genuine issues of material fact remain unresolved" rendering summary judgment "improvident." *Id*. at 9. Here, as in *Marcus*, it is unnecessary to revisit or apply *Walsh*'s suggested "relational" analysis, which was admittedly based on the administrative-production dichotomy abandoned in the current regulations and, thus, lacks fidelity to the exemption dictated by the FLSA's statutory command. *See supra* p. 10–14.

Dated: March 21, 2024   Respectfully submitted,

**MCDERMOTT WILL & EMERY LLP**


By: */s/ Rachel Cowen*       

   Rachel Cowen
   444 West Lake Street
   Chicago, IL 60606-0029
   Tele: +1 312 372 2000
   rcowen@mwe.com

   James M. Nicholas
   200 Clarendon Street
   Boston, MA 02116
   Tele: +1 617 535 4000
   jnicholas@mwe.com

   Henry Leaman
   444 West Lake Street
   Chicago, IL 60606-0029
   Tele:  +1 312 984 3245
   hleaman@mwe.com

   Attorneys for Appellant
   F.W. Webb Company

**CERTIFICATE OF COMPLIANCE**

I certify this brief complies with the requirements of Federal Rule of Appellate Procedure 35(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font. I further certify that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 4,044 words, excluding the parts of the brief exempted under Rule 32(f) and this Court's local rules, according to the count of Microsoft Word.

**CERTIFICATE OF SERVICE**

I certify that on March 21, 2024, I electronically filed this brief with the Clerk of this Court using the appellate CM/ECF system, and that counsel for all parties will be served by the CM/ECF system.

 Dated: March 21, 2024                                          */s/ Rachel Cowen*

                                                                      Rachel B. Cowen